**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROLA T. HIBSCHMAN,
<u>Plaintiff-Appellant,</u>

v.

REGENTS OF THE UNIVERSITY OF
MARYLAND SYSTEMS; COPPIN STATE
COLLEGE, a Constituent Institution;
CALVIN W. BURNETT, Doctor,
individually and in his capacity as
president; SIDNEY KROME, Doctor,
individually and as Vice-President;
T. J. BRYAN, Doctor, individually

and as Dean of the Division of Arts
and Sciences; MARY C. CLAWSEY,
Doctor, individually and as Chair of
the Department of Languages,
Literatures, and Philosophy; FRED
MACFADDEN, Doctor, individually
and as Chair of the Peer Evaluation
Committee for the Department of
Languages, Literatures, and
Philosophy,
<u>Defendants-Appellees.</u>

No. 98-1870

Appeal from the United States District Court

for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.

(CA-94-3511-S)

Argued: September 23, 1999

Decided: March 1, 2000

Before MURNAGHAN and MOTZ, Circuit Judges, and Joseph R. GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Tracy Ellsworth Mulligan, Jr., Rockville, Maryland, for Appellant. Anne Love Donahue, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

We affirm summary judgment to the Defendant University in this Title VII, Equal Pay Act, and section 1983 employment case.

I.

Plaintiff-Appellant, Professor Carola Throm Hibschman, is a Caucasian woman of German nationality who teaches at Coppin State College, a constituent institution of the University of Maryland system. The College has denied her promotion to both Associate and Full Professor on multiple occasions, and she has filed suit contesting the College's repeated refusal to promote her.

The College vests complete discretion over promotion decisions in the President, Dr. Calvin Burnett. While Dr. Burnett's decisions are appealable to a Committee, he is not obligated to defer to their recommendations. The College's criteria for promotion require candidates to have an "earned doctorate, or other appropriate terminal degree from a[n] internationally reputable foreign institution." Prof. Hibschman does not hold a Ph.D. degree, but claims that her German Staatsexamen II degree in Classical Philology from the University of Heidelberg is functionally equivalent to a doctorate degree and meets the College's stated criteria for promotions. Hibschman assembled testimonials from various academics, along with Coppin State's own Appeals Committee, to support her claim that her Staatsexamen degree is the equivalent of a terminal doctorate degree qualifying her for promotion.

There was competing evidence, however, that the Staatsexamen degree did not meet the University's standards for promotion. In 1982, both Hibschman and Coppin State President Calvin Burnett agreed to submit the issue concerning the status of Hibschman's degree to an independent consulting firm called International Consultants of Delaware. Their report concluded that "Ms. Hibschman does not have the equivalent of the American ABD (all but dissertation). The Doktorat is the next step in the German system of education and there is no indication that Ms. Hibschman has undertaken doctoral-level work." Hibschman has not contested that determination.

Since the report's findings in 1982, Hibschman has completed five years of doctoral-level course work, but her studies have not resulted in any additional degree that would change the conclusion of the earlier report, given that she must still undergo an oral exam and publish her dissertation before receiving her doctorate.

Hibschman filed a five count complaint, alleging national origin discrimination in violation of Title VII (Count 1); violations of the Equal Pay Act (Count II); retaliation in violation of Title VII (Count III); a 42 U.S.C. § 1983 claim for deprivation of her Title VII and Equal Pay Act rights (Count IV); and a 42 U.S.C.§ 1981 claim for racial discrimination (Count V).

The district court granted summary judgment for the Defendant (University of Maryland and Coppin State College) on all counts. Hibschman has appealed.

II.

We affirm the district court's grant of summary judgment on all counts. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A court should grant summary judgment "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249. To defeat a summary judgment motion on this basis, however, the nonmoving party has to make more than a minimal evidentiary showing. Instead, the evidence suggesting that a jury could rule in the nonmoving party's favor must be "significantly probative." Id. at 249-50.

Of Hibschman's five claims, the only one that presents a colorable argument is her Title VII national origin discrimination claim (Count 1). We will therefore confine our discussion to that Count alone.

III.

Because Hibschman's Title VII claim arises in an academic setting, we must proceed cautiously. This Court has previously noted that, "while Title VII is available to aggrieved professors, we review professorial employment decisions with great trepidation." Jiminez v. Mary Washington College, 57 F.3d 369, 376 (4th Cir. 1995). "We must be ever vigilant in observing that we do not sit as a super personnel council to review tenure decisions . . . always cognizant of the fact that professorial appointments necessarily involve subjective and scholarly judgments, with which we have been reluctant to interfere." Id. (internal quotations and citations omitted). We have noted that, especially in the academic setting, "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." Id. at 377. Our review of professorial employment decisions therefore "operate[s] with reticence and restraint," id., being limited to the question

4

of "whether the appointment or promotion was denied because of a discriminatory reason." Id. (citing Smith v. University of North Carolina, 632 F.2d 316, 345-47 (4th Cir. 1980)).

With these principles in hand, we turn to the framework for stating a Title VII claim. A Title VII plaintiff may prove intentional discrimination by two routes: (1) by direct evidence of discrimination, or (2) by circumstantial evidence using the shifting burdens of proof scheme established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Within the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence, showing (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that the position remained open to or was filled by similarly qualified applicants outside the protected class. See id . at 802. The "burden of establishing a prima facie case of disparate treatment is not onerous." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). In the instant case, Hibschman successfully met her burden. She is a member of a protected class (Germans); she suffered an adverse employment action (denial of promotion to Full Professor); and there is at least some evidence she was qualified for the promotion (the testimonials from multiple academics and from Coppin State's Appeals Committee).

Once a plaintiff like Hibschman successfully states a prima facie case of discrimination, the burden shifts to the employer, who must produce (but not prove) a legitimate, non-discriminatory reason for the adverse employment action. See Burdine, 450 U.S. at 254. If the employer meets its burden of production, the presumption of discrimination raised by the prima facie case is rebutted and "drops from the case." Id. at 255, n.10.

At this point, the plaintiff must come back and show, by a preponderance of the evidence, that the legitimate reason offered by the defendant was not the real reason for the adverse employment act but was merely a pretext for intentional discrimination. See id. at 253. It is important to stress that the plaintiff must prove both that the employer's reason was false and that discrimination was the real rea-

5

son for the adverse employment action. <u>See St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507-08 (1993).

In the instant case, the Defendant University successfully rebutted the inference of discrimination by producing a legitimate, non-discriminatory reason for Hibschman's non-promotion: namely, that she lacked the academic credentials (a doctorate degree or its equivalent) required for advancement to Full Professor. Because the University's burden is one of production, rather than proof, it "need not persuade the court that it was actually motivated by the proffered reasons." <u>Burdine</u>, 450 U.S. at 254. Likewise, the question of whether Hibschman actually possessed the requisite credentials is irrelevant at this stage of the analysis. All that matters is whether lacking the right credentials is, as a general matter, a legitimate, non-discriminatory basis for denying someone a promotion, which it undoubtedly is. <u>See id</u>. at 255 ("The explanation provided [need only] be legally sufficient to justify a judgment for the defendant").

What is arguable is whether a reasonable jury could conclude that President Burnett's professed explanation for Hibschman's non-promotion was (a) pretextual and (b) a specific pretext for intentional discrimination against Hibschman on the basis of her German nationality. Hibschman's best argument is that Burnett's decision to elevate the consulting firm's negative recommendation over those of the multiple experts attesting to her academic qualifications is so unreasonable that a rational juror could conclude that other discriminatory motives must have been in play.

The University's stated non-discriminatory reason for denying the promotion to Hibschman (her lack of a doctorate degree) may have been a pretext. Given that President Burnett completely disregarded the testimonials of multiple experts who vouched for Hibschman's academic qualifications, a reasonable juror could conclude that Burnett's reasons for not hiring her may have gone beyond a concern over her lack of a doctorate degree. Hibschman has at least created a genuine issue of material fact on this point, given the conflicting testimony of the various experts, many of whom attested that she had the requisite qualifications. The fact that Hibschman spent five years pursuing an American Ph.D. tends to cut the other way, suggesting that Hibschman's Staatsexamen II degree may not be the doctoral-

6

equivalent she alleges and that Burnett was sincere when he denied her promotion on this basis. Ultimately, however, reasonable jurors could conclude that Burnett's stated rationale was pretextual.

No reasonable jury, however, could conclude that the University's stated rationale was a pretext for intentional discrimination against Hibschman on the basis of her German nationality. To survive summary judgment, Hibschman has to do more than create an issue of material fact on whether Burnett's professed reason for not hiring her was pretextual. She must also create a genuine issue of material fact on whether the stated reason was a pretext for intentional discrimination against her on the basis of her German national origin. See Hicks, 509 U.S. at 508. Hibschman has failed to do so. Rather than harboring animus against Germans, Burnett may have thought Hibschman was not energetic in completing her American Ph.D. more promptly; or perhaps he simply did not like her scholarship. The record, however, simply does not bear out Hibschman's claim that he penalized her for being German.

Hibschman's only plausible argument is that Burnett refused to promote her because he disrespected the German University System in which she was educated and that his animus towards German Universities equates with animus against Germans as a people. It is a creative argument and one that might have merit in a non-academic context. But because academic promotional decisions are so complex, subjective, and multi-factored, see Jiminez, 57 F.3d at 376-77, we decline to equate prejudice against a nation's educational institutions with prejudice against its people -- at least in the academic employment setting. As the district court noted below,"Plaintiff has certainly produced evidence that calls her failure to be promoted into question, as a matter of wisdom. But this Court does not review employment decisions for wisdom; rather, the only concern of the Court is whether there is evidence of intentional, prohibited discrimination." And in the special context of academic promotional decisions, where the standards for hiring are often esoteric and involve so much subjectivity, we are reluctant to impute discriminatory animus to University employers absent more compelling evidence than Hibschman has offered. Courts always run some risk of mistaking benign employer behavior for impermissible discrimination in the Title VII context, especially when reviewing professorial employment decisions. This is

7

why the third stage of the <u>McDonnell Douglas</u> framework imposes such cumbersome proof requirements on Title VII plaintiffs -- requirements that courts must strictly enforce in the academic employment context. As we put the matter in <u>Jiminez</u>, "Determinations about such matters as teaching ability, research scholarship, and professional stature are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by the professional, particularly since they often involve inquiry into aspects of arcane scholarship beyond the competence of individual judges." 57 F.3d at 377 (quoting <u>Khunda v. Muhlenberg College</u>, 621 F.2d 532, 548 (3d Cir. 1980)).

We therefore uphold the district court's grant of summary judgment on Count 1, along with the remaining four counts, none of which present any meritorious arguments.

<u>AFFIRMED</u>

8